# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

COWTOWN FOUNDATION, INC., *et. al*,      :
                                            :
         *Plaintiffs*,      :      Civil Action No.:      22-1258 (RC)
                                            :
    v.      :      Re Document Nos.:      9, 22, 25, 26, 32
                                            :      36, 110, 113, 115
                                            :
U.S. DEPARTMENT OF AGRICULTURE,      :
*et. al*,      :
                                            :
         *Defendants*.      :

## MEMORANDUM OPINION

**GRANTING DEFENDANTS' MOTIONS TO DISMISS; DENYING ASSOCIATION DEFENDANTS' MOTION TO STRIKE; DENYING PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER; DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING PLAINTIFFS' MOTION FOR FURTHER RELIEF; DENYING PLAINTIFFS' MOTIONS TO COMPEL; DENYING PLAINTIFFS' MOTION FOR EVIDENTIARY HEARING; DENYING MOVANTS' MOTIONS TO INTERVENE**

## I. INTRODUCTION

Plaintiffs Cowtown Foundation, Inc. ("Cowtown") and Andrew Douglas on behalf of the Estate of Ed and Odell Douglas ("Douglas Estate") bring this action for declaratory and injunctive relief based on alleged discrimination by the U.S. Department of Agriculture ("USDA") in administering financial assistance programs and a consent decree. Cowtown's complaint, over the course of 145 somewhat scattered paragraphs, makes seven claims against USDA and Thomas J. Vilsack, in his role as Secretary of Agriculture (collectively, "Federal Defendants") for violations of the Equal Protection Clause. It also makes one claim for violation of the Equal Protection Clause against the Independent Community Bankers of America, the American Bankers Association, and the National Rural Lenders Association (collectively, "Association Defendants").

Association Defendants jointly moved to dismiss the complaint for failure to state a claim, Fed. R. Civ. P. 12(b)(6), on June 8, 2022.  Cowtown submitted an untimely opposition on June 28, 2022, to which Association Defendants replied on July 5, 2022.  Cowtown then proceeded to file several motions: a motion for a temporary restraining order on August 12, 2022, a submission styled as a "Motion for Further Relief FRCP 57 Complaint for Direct, Indirect and Consequential Damages" on August 17, 2022, a motion for partial summary judgment on August 18, 2022, and two submissions styled as motions to compel on October 5, 2022 and October 10, 2022.  Association Defendants opposed the motion for a temporary restraining order on August 19, 2022 and moved to strike the motions for further relief and partial summary judgment on August 31, 2022.  On September 9, 2022, Federal Defendants filed a motion to dismiss for lack of jurisdiction, Fed. R. Civ. P. 12(b)(1), and failure to state a claim, Fed. R. Civ. P. 12(b)(6), together with its opposition to Cowtown's motion for a temporary restraining order and motions for further relief and partial summary judgement.  Beginning on September 19, 2022, the Court also began receiving hundreds of letters styled as motions to intervene as plaintiffs.  Finally, on October 24, 2022, Cowtown filed a motion for an evidentiary hearing, followed by another motion for a temporary restraining order the next day.

For the reasons stated below, Association Defendants' and Federal Defendants' motions to dismiss are granted, and Plaintiffs' motions and the motions to intervene are denied as moot.

## II.  BACKGROUND

Two pieces of context are relevant to interpreting Plaintiffs' allegations.  First, in 1999, a court in this circuit approved a consent decree ("*Pigford* consent decree" or "consent decree") settling a class action alleging that USDA discriminated against African American farmers in administering credit and benefit programs under the Equal Credit Opportunity Act.  Compl. ¶¶

13, 12, 14,[1] ECF No. 1; Fed. Defs.' Mot. to Dismiss ("Fed. Defs.' Mot.") at 6, ECF No. 39; *see also Pigford v. Glickman*, 185 F.R.D. 82, 86 (D.D.C. 1999), *aff'd*, 206 F.3d 1212, 1214 (D.C. Cir. 2000).[2]  The consent decree "extinguished the claims against the USDA of all members of the *Pigford* plaintiffs' class who did not opt out of the Consent Decree in a timely fashion," and deemed all resolutions final and not subject to judicial review.  *Pigford v. Vilsack*, Nos. 97-cv-1978, 98-cv-1693, 2016 WL 4921378, at *2, *5 (D.D.C. Sept. 15, 2016).

Second, in March 2021, Congress passed the American Rescue Plan Act ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4 (2021), which provided economic aid to support the country's recovery from the COVID-19 pandemic, including aid to the agriculture sector.  *See* §§ 1001-1007.  As relevant here, Section 1005 of ARPA provided for payments of up to 120 percent of certain USDA farm loan debts held by "socially disadvantaged farmer[s] or rancher[s]," a group defined to include those who "have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities." § 1005; 7 U.S.C. § 2279(a)(5)–(6).  In addition, Section 1006 provided for "financial assistance to socially disadvantaged farmers, ranchers, or forest landowners that are former farm loan borrowers that suffered related adverse actions or past discrimination or bias in Department of Agriculture programs, as determined by the Secretary."  § 1006.  In August 2022, Congress repealed Section 1005 and revised Section 1006 to, among other things, cap financial assistance at $500,000 per recipient and require the program to be administered "through 1 or more qualified

---

[1] Paragraph numbering appears out of order in the complaint; the Court lists the paragraph numbers as they appear.

[2] "The court may take judicial notice of public records from other court proceedings." *Lewis v. Drug Enf't Admin.*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citing *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)).

nongovernmental entities selected by the Secretary subject to standards set and enforced by the Secretary."  Pub. L. 117-169, 136 Stat. 1818 §§ 22007–08.

### III.  STANDARD OF REVIEW

#### A.  Rule 12(b)(1)

When considering a motion to dismiss, courts accept all material factual allegations in the complaint as true and draw all reasonable inferences in plaintiffs' favor. *American Nat'l Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).  However, courts must address jurisdiction as a "threshold matter, " *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998), and "[t]he burden of establishing any jurisdictional facts to support the exercise of the subject matter jurisdiction rests on the plaintiff."  *CFA Inst. v. Andre*, 74 F. Supp. 3d 462, 465 (D.D.C. 2014); *see also McBride v. Mnuchin*, No. 19-cv-60, 2019 WL 3323412, at *2 (D.D.C. July 24, 2019) ("Before addressing the merits of a case, a court must confirm that it has subject matter jurisdiction.") (internal citation omitted).  Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) and therefore is "a necessary 'predicate to any exercise of [Article III courts'] jurisdiction.'"  *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.D.C. 2012) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc)).  Accordingly, "[e]very plaintiff in federal court bears the burden of establishing the three elements that make up the irreducible constitutional minimum of Article III standing: injury-in-fact, causation, and redressability." *Id.* at 1362 (internal citation omitted).  Standing is "not dispensed in gross;" rather, Plaintiffs must show standing as to each claim. *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation omitted).

### B.  Rule 12(b)(6)

To meet the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  In addition, while the Court must treat the complaint's factual allegations as true and draw reasonable inferences in plaintiffs' favor, the Court need not accept "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint, nor legal conclusions cast in the form of factual allegations."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (internal quotations omitted).

### IV.  ANALYSIS

The thrust of Plaintiffs' allegations against Federal Defendants is that USDA discriminated against African American farmers in carrying out the *Pigford* consent decree, in administering loans and financial assistance under Sections 1005 and 1006 of ARPA, and in adjudicating challenges to the way USDA did those things.  Plaintiffs' sole claim against Association Defendants charges them with "intimidating Defendant Vilsack from writing off debt of Black farmers through sections 1005 and 1006 of the American Rescue Plan."  Compl. ¶ 138.  The Court will address the claim against Association Defendants first before proceeding to consider the claims against Federal Defendants.

## A.  Association Defendants' Motion to Dismiss

Association Defendants moved to dismiss the complaint on June 8, 2022.  Therefore, Plaintiffs' opposition was due by June 22, 2022.  *See* LCvR 7(b).  Because Plaintiffs, who are represented by counsel, did not submit their opposition until June 28, 2022, it was untimely and the Court may treat the motion as conceded.  *Id.*  Indeed, because Plaintiffs have not moved for an extension of time under Fed. R. Civ. P. 6(b) or provided any explanation for the untimely filing, the Court "ha[s] no basis on which to exercise its discretion" to consider the untimely response.  *Smith v. Dist. of Columbia*, 430 F.3d 450, 367–68 (D.C. Cir. 2005).  However, the D.C. Circuit has expressed discomfort with "effectively plac[ing] the burden of persuasion on the non-moving party" by "granting a motion to dismiss solely because the plaintiff failed to timely respond," and emphasized the "weighty preference in favor of deciding cases on their merits." *Cohen v. Bd. Of Trustees of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481–83 (D.C. Cir. 2016).  Accordingly, in order to avoid turning "what should be an attack on the legal sufficiency of the complaint into an attack on the legal sufficiency of the response in opposition to the motion to dismiss," *Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 345 (D.C. Cir. 2018), the Court will consider Plaintiffs' untimely opposition in its evaluation of Association Defendants' motion to dismiss.

Plaintiffs' sole claim against Association Defendants alleges that they violated the Equal Protection Clause when they

> intimidate[d] Defendant Vilsack from writing off debt of Black farmers through sections 1005 and 1006 of the American Rescue Plan Act so the [b]anks in their organization will not lose profits, but [did] not discourage Defendant Tom Vilsack to provide [*sic*] relief to White farmers through Pandemic Relief of the [American Rescue Plan Act] and relief from the Commodity Credit Corporation from former President Trump's Trade War with China.

Compl. ¶ 138.  The complaint repeats that "Defendant Vilsack did not write off any loans or provide injunctive relief to Black farmers" because of "threats, conspiracy and intimidation by" Association Defendants.  Compl. ¶ 141.  It also pronounces somewhat cryptically that "the Bankers interfered with business expectancy and grant relief [*sic*] from other pandemic relief programs" and that Association Defendants "caused thousands of guaranteed loans not to be paid and interfered with billions of pandemic relief that could have been released to Black farmers." Compl. ¶¶ 142, 144.

As a "threshold matter," the Court first considers whether it has jurisdiction over this claim.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).  The Court agrees with Association Defendants that they are not state actors and therefore cannot be held liable for violating the Equal Protection Clause.  Assoc. Defs.' Mot. to Dismiss ("Assoc. Defs.' Mot.") at 7–8, ECF No. 9.  Plaintiffs' complaint claims that "[t]he private lenders are insured by the FDIC and therefore subject to equal protection under the Constitution."  Compl. ¶ 145.  But the mere fact that members of Association Defendants' organizations are insured by the Federal Deposit Insurance Company falls far short of the necessary showing that there is "such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself" for purposes of an equal protection claim.  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (cleaned up);  *See Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172 (1972) (explaining the "dichotomy between discriminatory action by the State, which is prohibited by the Equal Protection Clause, and private conduct, however discriminatory or wrongful, against which that clause erects no shield" (cleaned up)); *Anderson v. USAir*, 619 F. Supp. 1191, 1196 (D.D.C. 1985) (explaining that neither "[r]egulation by the federal government" nor "receipt of federal or state assistance" converts a private entity into a

state actor susceptible to an equal protection claim).  Accordingly, the Court lacks subject matter

jurisdiction over Plaintiffs' claim against Association Defendants.[3]  *See Price v. College Park*

*Honda*, No. 05-cv-0624, 2006 WL 1102818, at *5, *7 (D.D.C. Mar. 31, 2006) (holding that,

because "none of the many private defendants are alleged in the complaint to have acted on

behalf of [the] state," the court "lacks subject matter jurisdiction over [defendants] as non-state

actors for purposes of the Equal Protection Clause").

        In addition, even if the Court had jurisdiction, Plaintiffs fail to state a claim against

Association Defendants.  As Association Defendants point out, the complaint contains no factual

allegations to support its conclusory allegation that Association Defendants coerced the

Secretary of Agriculture into discriminating against Plaintiffs through threats and intimidation.

*See* Assoc. Defs.' Mot. at 2–3.  This falls short of the pleading standard required under Fed. R.

Civ. P. 8.[4]  *Iqbal*, 556 U.S. at 678 (holding that Rule 8 "demands more than an unadorned, the-

---

[3] The complaint asserts that the Court has federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332.  Compl. at ¶¶ 1–2.  However, the only relief Plaintiffs appear to seek against Association Defendants is a declaration that it is "unconstitutional and tortious interference of business expectancy" to violate the Civil Rights Act of 1871, and they provide no explanation showing that the value of this relief exceeds the $75,000 amount-in-controversy threshold under 28 U.S.C. § 1332.  *See* Compl. at 31–32. Accordingly, in addition to lacking federal question jurisdiction to consider the claim because Association Defendants are not state actors, the Court also lacks diversity jurisdiction because Plaintiffs did not plead an amount-in-controversy over $75,000.  *See Bronner on Behalf of Am. Studies Assoc. v. Duggan*, 962 F.3d 596, 611 (D.C. Cir. 2020) (affirming the district court's finding that it lacked diversity jurisdiction because plaintiffs "fail[ed] to explain how the equitable relief they seek exceeds the $75,000 threshold").

[4] Plaintiffs' opposition contends that Association Defendants sent a letter in April 2021 in which they "blatantly wrote out their intentions to discriminate against."  Pls.' Opp'n to Assoc. Defs.' Mot. at 4, ECF No. 17.  The sentence stops there, but presumably Plaintiffs meant that Association Defendants wrote out their intentions to discriminate against socially disadvantaged farmers.  Plaintiffs also claim in their opposition that "written and vocal threats to the Co-Defendant Vilsack were memorialized in Exhibit 1 of the April 2021 letter." *Id.*  After failing to attach a civil cover sheet to their originally filed complaint, three days later, Plaintiffs attached a copy of what appears to be this letter when filing the civil cover sheet.  *See* ECF No. 2-1.  Setting aside the fact that Plaintiffs' description of the letter and its exhibit does not match their contents,

defendant-unlawfully-harmed-me-accusation" and that "naked assertions devoid of further factual enhancement" do not suffice (cleaned up)); *see e.g.*, *Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (reversing the district court's finding that plaintiff stated equal protection claims because plaintiff's "spare facts and allegations . . . simply do 'not permit the court to infer more than a mere possibility of misconduct'" (citing *Iqbal*, 556 U.S. at 679)).

### B.  Federal Defendants' Motion to Dismiss

The complaint is difficult to follow, but the Court has endeavored to characterize Plaintiffs' seven claims against Federal Defendants as follows:

(1) Federal Defendants refused to provide funding under Sections 1005 and 1006 of the American Rescue Plan Act to socially disadvantaged farmers in violation of the Equal Protection Clause.  Compl. ¶¶ 38–59.

(2) Federal Defendants refused to timely adjudicate "discrimination complaints lodged by Black farmers" in violation of the Equal Protection Clause.  Compl. ¶¶ 60–78.

(3) Related to (2), the laws and regulations that allow Federal Defendants "to employ a dual administrative justice that denies timely resolution of administrative complaints" of discrimination violate the Equal Protection Clause.  Compl ¶¶ 79–97.

(4) Related to (2) and (3), Federal Defendants' failure to timely adjudicate discrimination claims and dismissal of claims without proper notice violates the Equal Protection Clause.  Compl. ¶¶ 98–113.

---

the complaint makes no reference to the letter whatsoever.  *See* Compl. ¶¶ 137–45.  Even if Plaintiffs' opposition was timely filed, "[i]t is axiomatic that a party may not amend [its] complaint through an opposition brief."  *Singh v. Dist. of Columbia*, 55 F. Supp. 3d 55, 70 (D.D.C. 2014) (internal quotation omitted).

(5) Federal Defendants violated the Equal Protection Clause by misleading Congress in

    order to obtain American Rescue Plan Act funds so that USDA could "try to write off

    actual debt of [socially disadvantaged farmers and ranchers] opposed [*sic*] to actual

    damages," and then "purposely delay[ing] the payments to those farmers so that

    White farmers could block the debt relief" while misleading the farmers "that their

    debt would be paid."[5]  Compl. ¶¶ 114–121.

(6) Federal Defendants failed to adhere to the terms of the *Pigford* consent decree, in

    violation of the Equal Protection Clause.  Compl. ¶¶ 122–27.

(7) Federal Defendants' use of the "County Committee System to decide the credit

    worthiness of Black Farmers for loans and subsidies" violates the Equal Protection

    Clause.  Compl. ¶¶ 128–136.

### 1.  Claim Preclusion Does Not Bar Plaintiffs' Claims

Federal Defendants argue that Plaintiffs' claims are precluded because "Cowtown and

Lea, President of Cowtown, has [*sic*] brought numerous other nearly identical complaints and

motions for emergency injunctive relief in this district on behalf of Cowtown."  Fed. Defs.' Mot.

at 13.  Federal Defendants specify just one of those cases that they contend bars Plaintiffs'

current claims, *Cowtown Found. v. United States Dep't of Agric. (Cowtown I)*, No. 21-cv-1342,

2022 WL 491547 (D.D.C. Feb. 17, 2022).

"Under the doctrine of res judicata, or claim preclusion, a subsequent lawsuit will be

barred if there has been prior litigation (1) involving the same claims or cause of action, (2)

between the same parties or their privies, and (3) there has been a final, valid judgment on the

merits, (4) by a court of competent jurisdiction."  *Smalls v. United States*, 471 F.3d 186, 192

---

[5] This is the Court's best effort to decipher this claim, which was particularly difficult to follow.

(D.C. Cir. 2006).  Importantly, "dismissals for lack of jurisdiction are not decisions on the merits and therefore have no *res judicata* effect on subsequent attempts to bring suit in a court of competent jurisdiction." *Kasap v. Folger Nolan Fleming & Douglas*, 166 F.3d 1243, 1248 (D.C. Cir. 1999); *see also Ruiz Rivera v. Holder*, 666 F. Supp. 2d 82, 91–92 (D.D.C. 2009) ("[T]he Court's previous decision . . . was a dismissal on standing grounds, not a final judgment on the merits, and as a result, it cannot be said that the plaintiff received or had a full and fair opportunity to litigate the issues alleged in this action." (cleaned up)).

In *Cowtown I*, plaintiffs Cowtown and Leroy Smith, Jr. [6] sued the government based on allegations that are similar to those presented here.  But the court only reached the merits "on claims for which Smith himself has plausibly alleged an injury in fact."  *Cowtown I*, 2022 WL 491547, at *3.  The court dismissed the rest of plaintiffs' claims for lack of jurisdiction, explaining that "plaintiffs lack standing . . . to raise programmatic challenges to [USDA's] conduct."  *Id.*  Accordingly, the court held that

> the plaintiffs may not challenge the Department's alleged failure to issue final decisions to other farmers, any discriminatory conduct in administering other farmers' loans, and the Department's general administration of the *Pigford* consent decree.  Similarly, the plaintiffs may not challenge the Department's administration of the American Rescue Plan Act, from which Smith has not alleged a personal injury.

*Id.* (cleaned up).  All of Plaintiffs' present claims fall into these categories, which the *Cowtown I* court dismissed for lack of standing, and thus to which claim preclusion did not attach. Accordingly, Plaintiffs' claims are not precluded.

---

[6] As the Court finds that Plaintiffs' claims are not precluded because there was no prior adjudication on the merits, it need not consider how the presence of a different co-plaintiff in this case would impact the preclusive effect of the prior litigation.

2.  Plaintiffs Lack Standing

While *Cowtown I* does not preclude Plaintiffs' claims, the Court agrees with its standing analysis and likewise finds that Plaintiffs lack standing because they have failed to adequately allege that they suffered a concrete and particularized injury caused by Federal Defendants.  To start, Plaintiff the Douglas Estate is mentioned in just one of the 145 paragraphs in the complaint, in the section describing the parties.  Compl. ¶ 7.  Andrew Douglas is described as "an African American and a member of a protected class," but there are no factual allegations whatsoever in the complaint indicating that Mr. Douglas or the decedents whose estate he represents are affiliated with Cowtown or that the Douglas Estate was harmed by Defendants.[7]  *Id*.  This falls far short of the requisite showing to invoke the Court's limited jurisdiction to hear only "Cases" and "Controversies," U.S. Const. art. III, § 2, and accordingly the Court finds that the Douglas Estate lacks standing.

Turning to Plaintiff Cowtown, there are two ways that it could establish standing: "on its own behalf, as an organization, or on behalf of its members, as associational standing." *Elec. Privacy Info. Ctr. v. United States Dep't of Com.*, 928 F.3d 95, 100 (D.C. Cir. 2019).  With respect to its own standing as an organization, Cowtown must show "that the defendant's actions cause a concrete and demonstrable injury to the organization's activities that is more than simply a setback to the organization's abstract social interests." *Id.* at 100–101 (internal citation omitted).  The complaint makes no allegation that Cowtown was harmed as an organization by

---

[7] Plaintiffs' opposition lists several individuals with the last name "Douglas," whom it claims were harmed by "noncompliance of [*sic*] the Pigford settlement."  Pls.' Opp'n to Fed. Defs.' Mot. at 7–8, ECF No. 43.  Setting aside the likelihood that any claim alleging noncompliance with the *Pigford* settlement would not be redressable by the Court anyway, as the *Pigford* consent decree restricted judicial review, as noted above, Plaintiffs may not amend their pleading in a response to a motion to dismiss.  *See Singh*, 55 F. Supp. 3d at 70.

Defendants.  It also makes no attempt to describe Cowtown's activities or goals whatsoever.[8]

From the allegations in the complaint, the Court gathers that Cowtown purports to represent

certain interests of African American farmers, but the complaint only describes Cowtown as "a

Tennessee Corporation."  Compl. ¶ 6.  Thus, while Cowtown has insinuated that it has a social

interest in representing socially disadvantaged farmers, "that alone is not sufficient to constitute

any injury to its own activities."  *Cowtown Found. v. United States Dep't of Agric.*, No. 21-cv-

1342, 2021 WL 3633642, at *1, *3 (D.D.C. Aug. 17, 2021).

      With respect to associational standing, Cowtown must show that "(1) at least one of [its]

members has standing to sue in her or his own right, (2) the interests the association seeks to

protect are germane to its purpose, and (3) neither the claim asserted nor the relief requested

requires the participation of an individual member in the lawsuit."  *Elec. Privacy Info. Ctr.*, 928

F.3d at 101 (internal quotation omitted).  It is Cowtown's burden to "support each element of

their claim to standing by affidavit or other evidence."  *Am. Chemistry Council v. Dep't of

Transp.*, 468 F.3d 810, 818 (D.C. Cir. 2006) (internal citation omitted).

      First, Cowtown fails to demonstrate that the interests it seeks to protect are germane to its

purpose because, as explained above, it fails to describe its purpose or activities at all.  Second,

Cowtown also fails to show that any member of its organization has standing to sue.  The

complaint is not accompanied by any affidavits to support a finding that any particular members

have suffered a concrete and particularized harm caused by Defendants; indeed, as Federal

---

[8] Plaintiffs' opposition argues, inexplicably, that "Defendants never questioned Cowtown
Foundation [*sic*] organizational standing to be a named Plaintiff in this suit because it is proper."
Pls.' Opp'n to Fed. Defs.' Mot. at 1.  This is flatly false.  *See* Fed. Defs.' Mot. at 21 ("Cowtown
has not met the requisite burden to demonstrate standing.").  It is also irrelevant because the
Court has "an obligation to confirm its own jurisdiction."  *Libertarian Nat'l Comm. v. Fed.
Election Comm'n*, 930 F. Supp. 2d 154, 162 (D.D.C. 2013) (citing *Lee's Summit, Mo. v. Surface
Transp. Bd.*, 231 F.3d 39, 41 (D.C. Cir. 2000)).

Defendants point out, the complaint fails to identify or allege facts about any specific members at all. [9]  Fed. Defs.' Mot. at 21.  Plaintiffs point to *Ranchers-Cattleman Action Legal Fund, United Stockgrowers of Am. v. United States Dep't of Agric.*, 573 F. Supp. 3d 324 (D.D.C. 2021), in which the court held that, where a plaintiff association alleges sufficient facts about the identity of and injury to a subgroup of its members, it need not name any individual member in order to establish an injury in fact at the motion to dismiss stage. *Id.* at 334–36.  But regardless of whether Plaintiffs' failure to provide the name of a Cowtown member should preclude standing, Plaintiffs must provide sufficient factual allegations about a Cowtown member to clear the "irreducible constitutional minimum" requirements of standing.  *Lujan*, 504 U.S. at 560.

Plaintiffs' complaint makes allegations about "some members" of Cowtown.  *See, e.g.*, Compl. ¶¶ 48–55 ("Some members . . . have accepted discrimination since the year 2000 . . . . Some members . . . have farm ownership loans with private banks that are guaranteed by the Dept. of Agriculture. . . . ").  It also makes allegations variously about "African American farmers," "Black farmers," and "socially disadvantaged farmers" (or SDFRs), without explaining whether these groups are broader or narrower than each other or Cowtown's membership.  *See, e.g.*, Compl. ¶¶ 31, 62, 97.  These vague allegations do not allow the court to discern if sufficient facts apply to any particular individual to establish that he or she suffered a concrete and particularized injury that was caused by Federal Defendants and is redressable by the Court.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009) (holding that even if it is "possible–

---

[9] Plaintiffs' opposition does not dispute that the complaint fails to allege facts about particular Cowtown members.  Instead, in reference to its claim about the *Pigford* consent decree, the opposition lists several individuals whom it implies are members of Cowtown.  Pls' Opp'n to Fed. Defs.' Mot. at 7–8.  As mentioned above, any *Pigford* claim likely would not be redressable by the Court given the consent decree's restrictions on judicial review, and regardless Plaintiffs may not cure deficiencies in their complaint by way of their opposition brief.  *See Singh*, 55 F. Supp. 3d at 70.

perhaps even likely–that one individual will meet all of these criteria . . . speculation does not

suffice"); *Commissioned Officers Assoc. of United States Pub. Health Serv. v. Bunch*, No. 21-cv-

853, 2022 WL 951271, at *4 (D.D.C. Mar. 30, 2022) (finding that association plaintiff lacked

standing because it "submitted no affidavits, made only general allegations of member injury in

its opposition brief, and failed to specifically identify any individual member suffering harm").

More is required to demonstrate an injury that is "concrete and particularized" and "actual or

imminent, not conjectural or hypothetical." *Am. Chemistry Council*, 468 F.3d at 818 (internal

citations omitted); *Cowtown Found.*, 2021 WL 3633642 at *3 ("To date, Cowtown has

identified only one of its members: its co-plaintiff Smith.  Because Smith has not established

standing as an individual, Cowtown cannot establish standing as an association."); *Twin Rivers

Paper Co. v. Sec. and Exch. Comm'n*, 934 F.3d 607, 613 (D.C. Cir. 2019) ("It is 'not enough to

aver that unidentified members have been injured.'" (citing *Chamber of Commerce v. EPA*, 642

F.3d 192, 199 (D.C. Cir. 2011)); *Freedom Watch, Inc. v. McAleenan*, 442 F. Supp. 3d 180, 193–

94 (D.D.C. 2020) (holding that plaintiff organization lacked associational standing because its

complaint "does not identify a single member or provide any declarations or statements to

indicate the organization brings suit on behalf of [members'] interests" and therefore "the Court

can do no more than speculate about whether any of its members would have standing to sue in

their own right").

      Accordingly, the Court finds that Plaintiffs have failed to establish standing.  Therefore,

the Court lacks subject matter jurisdiction over their claims and the action must be dismissed. [10]

Fed. R. Civ. P. 12(h)(3).

---

[10] To the extent that Plaintiffs also make a claim for relief under the Declaratory Judgment Act,
*see* Compl. ¶¶  29–37, the Court similarly lacks jurisdiction to consider it, as it is a "well-
established rule that the Declaratory Judgment Act is not an independent source of federal

## V.  CONCLUSION

For the foregoing reasons, Association Defendants' Motion to Dismiss (ECF No. 9) and Federal Defendants' Motion to Dismiss (ECF No. 36) are GRANTED and the action is DISMISSED.  Accordingly, Association Defendants' Motion to Strike (ECF No. 32) is DENIED as moot, Plaintiffs' Motions for a Temporary Restraining Order (ECF Nos. 22, 115), Motion for Further Relief (ECF No. 25), Motion for Partial Summary Judgment (ECF No. 26), Motions to Compel (ECF Nos. 108, 110), and Motion for Evidentiary Hearing (ECF No. 113) are DENIED as moot, and movants' motions to intervene as plaintiffs are DENIED as moot.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 1, 2022                                    RUDOLPH CONTRERAS
                                                           United States District Judge

---

jurisdiction" and the "availability of declaratory relief presupposes the existence of a judicially remediable right."  *C&E Serv's Inc. of Wash. v. D.C. Water and Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) (cleaned up); *see also Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013) ("A count for a declaratory judgment is not cognizable as a separate cause of action, but is more properly included in the prayer for relief." (cleaned up)).